IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SERGIO AGUSTINE MARIN                                                                          PLAINTIFF

v.                                    Civil No. 08-2056

LT. VENA CUPP, Administrator,
Crawford County Detention Center                                                           DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff, Sergio Agustine Marin (hereinafter Marin), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Marin is currently an inmate of the Arkansas Department of Correction. The events at issue in this action occurred while Marin was incarcerated in the Crawford County Detention Center from February 5, 2008, until his transfer to the Arkansas Department of Correction on June 1, 2008. Marin contends his constitutional rights were violated in the following ways: (1) by deductions made from his account for prescription medications; (2) by being subjected to unconstitutional conditions of confinement; and (3) by being subjected to discrimination on the basis of his race.

Defendant filed a summary judgment motion (Doc. 20). Marin filed a response to the motion on August 2, 2010. The summary judgment motion is ready for decision.

### Background

Marin was sentenced to a period of imprisonment in the Arkansas Department of Correction (ADC) on January 15, 2008. *Plaintiff's Response* (hereinafter *Resp.*) at ¶ 2. He was booked into the Crawford County Detention Center (CCDC) on February 5, 2008. *Resp.* at ¶ 1(A). He remained incarcerated there until June 1, 2008, when he was transferred to the Arkansas Department of Correction (ADC). *Id.* at ¶ 1(B).

When he was booked in, Marin completed a medical intake form. *Resp.* at ¶ 7(D); *Defendant's Exhibit* (hereinafter *Deft's Ex.*) D. On it Marin indicated he had the following health problems: back trouble; headaches; mental illness or nerves; respiratory illness; heart defects; circulatory problems; high blood pressure; hepatitis or liver defects; ulcers or stomach defects; and had suicidal thoughts.[1] *Id.* He also indicated he was taking Alprazolam for depression and two medications for high blood pressure. *Id.* at ¶ 7(E).

On May 13, 2008, $759.13 was taken out of Marin's account to pay for medication and nurses visits. *Resp.* at ¶ 7(A). Marin states he wasn't aware that he had any money on his books. *Id.* at ¶ 7(B). He was not denied medical care or medications because he had insufficient funds to pay for them. *Id.* at ¶ 7(G).

Marin was taking two medications Alprazolam and Effexor for depression. *Resp.* at ¶ 7(C). He received this medication while incarcerated at the CCDC. *Id.*

On May 19, 2008, Marin submitted a grievance asking why he was "having" to pay for his prescriptions despite the fact he had already been sentenced to the ADC. *Resp.* at ¶ 3. He stated the prescriptions were too expensive for him to pay while incarcerated. *Id.* He asked that this be straightened out before his next refill. *Id.*

A jailer responded that the ADC would take care of his medication once he was incarcerated in an at an ADC facility. *Resp.* at ¶ 4. Until then, he was told it was his responsibility. *Id.*

Marin submitted a second grievance on May 19, 2008. *Resp.* at ¶ 5. He asked why someone called his brother and asked for money for his medications. *Id.* Marin also stated he did not

---

[1] Marin states he reported all these health problems with the exception of having suicidal thoughs. *Resp.* at ¶ 7(D). The intake form, however, has "yes" circled indicating he had "current suicide thoughts."

authorize any money in his account to be used for his medication. *Id.* He stated $700 had been deducted for medication and nurses visits and he was not supposed to have to pay the bills while in their custody. *Id.*

In response, Lt. Cupp stated that Marin's family had called the detention center and not the other way around. *Deft's Ex.* B. She also stated that Marin's prescriptions were his responsibility and she would not answer another grievance on this. *Id.* Marin indicates he does not know whether or not his brother called the detention center. *Resp.* at ¶ 6 & 7(H). However, he states "then the CCDC told my brother about my medication situation letting him know that my fund[s were] low and that's why my brother send $1000." *Id.* at ¶ 7(H). He states this is his assumption. *Id.*

Main maintains the CCDC did not have the funds to provide people with adequate medical care. *Resp.* at ¶ 9(B). By way of example, he states that when he was in the CCDC in 2005 he didn't have any money, ran out of medication, and was not provided with any medication refills. *Id.* At the time, he states that Lt. Cupp did not want to deal with the situation or know the seriousness of his medical condition and sent him to isolation. *Id.* at ¶ 10(B).

According to Marin, the living areas in the CCDC were only clean in the mornings. *Resp.* at ¶ 8. The rest of the day, he states the areas were "nasty." *Id.* He also maintains that the temperature in the facility varied often. *Id.* He asserts the facility was overcrowded. *Id.* at ¶ 9(A). He estimates the size of the cell he was assigned to was eight foot by six foot. *Id.* at ¶ 20. The cell had a table, toilet/sink combination, and two bunks. *Id.* Most of the time, there were four inmates assigned to the cell. *Id.* He had access to a day room. *Id.*

Marin contends the shower was never cleaned, was slimy, the water was too hot, and it leaked causing people to fall. He indicates the trustees were the ones who did the cleaning. *Resp.*

at ¶ 14(C). He never asked for cleaning supplies to clean the shower. *Id.* He believed he was not supposed to be "entrusted" with cleaning supplies. *Id.* He never fell or was injured as a result of the condition of the shower. *Id.*

He had a bunk or mat to sleep on each night. *Resp.* at ¶ 11. He was allowed to shower on a regular basis. *Id.* at ¶ 14(A). Between showers he had access to basic hygiene items such as soap and water. *Id.* at ¶ 14(C).

Marin indicates he was not provided with enough food. *Resp.* at ¶ 12(A). He said many inmates refused to eat the food provided. *Id.* He received something to drink with each meal and in between meals had access to drinking water. *Id.* at ¶ 16.

Marin did not suffer physically as a result of the food he was served. *Id.* at ¶ 12(B). Although Marin asserts he lost fifteen while at the CCDC, the records currently before the court indicate he weighed 185 pounds when booked into the CCDC and now weighs 180 pounds. *Resp.* at ¶ 12(C); *Deft's Ex.* E; *Deft's Ex.* F.

He was able to send and receive mail. *Resp.* at ¶ 17. He had adequate clothing. *Id.* at ¶ 18. He had opportunities to exercise. *Id.* at ¶ 19.

Marin also believes he should have been tested for various diseases including Tuberculosis and AIDS. *Resp.* at ¶ 21. He indicates he was not provided with shower shoes and as a result had to shower bare footed. *Id.* He maintains this exposed him to infections and resulted in his getting a foot fungus. *Id.* Marin submitted no grievances regarding his conditions of confinement. *Resp.* at ¶ 13.

Marin contends he was discriminated against by the guards. *Resp.* at ¶ 15. He asserts he was discriminated against in 2005 when he was not provided medical treatment and instead was sent to the hole. *Id.* He also maintains Hispanics were put on the floor while Caucasian inmates were given bunks. He never made Lt. Cupp aware of the discrimination. *Id.* He never submitted a complaint about this discrimination. *Id.*

### **Summary Judgment Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a . . . verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

**Discussion**

Defendant has now moved for summary judgment. Defendant maintains she is entitled to judgment in her favor on each of the claims asserted by Marin.

*Deductions for Medication and Visits to the Nurse*

In this case, Marin objects to being required to pay for his prescription medication and for visits to the nurse. Marin concedes he was not denied medical care or medications because he did not have sufficient funds to pay them. *Resp.* at ¶ 7(G). While the Eighth Amendment's prohibition against cruel and unusual punishment requires jails to provide basic medical care to inmates, there is no requirement that the jails provide the medical care free of cost. *See e.g., Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997)(deliberate-indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society). Inmates may be constitutionally required to pay for their own medical expenses, if they can afford to do so. *Roberson v. Bradshaw*, 198 F.3d 645 (8th Cir. 1999). *See also Moore v. Plaster*, 266 F.3d 928, 933 (8th Cir. 2001)(Prison inmate may file replevin action in state court to recover money taken from his prison account); *Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981)(no basis for due process claim where deductions from prisoner accounts were assessments for value received).

To the extent Marin is now attempting to assert a claim based on events occurring in 2005, we find those claims are not properly before the court. The complaint in this case indicates it is about Marin's 2008 incarceration in the CCDC. Moreover, any claim now asserted concerning the 2005 incarceration, would be barred by the applicable statute of limitation. *See e.g., Miller v.*

*Norris*, 247 F.3d 736, 739 (8th Cir. 2001)(The three year statute of limitations contained in Ark. Code Ann. § 16-56-105(3) applies to § 1983 cases).

### *Conditions of Confinement Claims*

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc.). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at

875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

First, we believe these claims fail because Marin submitted no grievances regarding his conditions of confinement. *Resp.* at ¶ 13. As amended by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Clearly, exhaustion is required.

Second, we believe the claims fail as a matter of law. Marin received medical care and prescription medications, although he was charged for these services. *Resp.* at ¶ 7(G). The living areas were cleaned each day. *Id.* at ¶ 8. He had a bunk or mat to sleep on. *Id.* at ¶ 11. Although he did not agree the diet was adequate, he suffered no physical injuries as a result of the food he was served. *Id.* at ¶ 12(A). He received something to drink with each meal and between meals had access to drinking water. *Id.* at ¶ 16.

He had adequate clothing and opportunities to exercise. *Resp.* at ¶ 18 & ¶ 19. He was able to send and receive mail. *Id.* at ¶ 17. He was allowed to shower on a regular basis and had access to basic hygiene items between showers. *Id.* at ¶ 14(A) & ¶ 14(B).

"[E]xtreme deprivations are required to make out a conditions-of-confinement claims. [O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995, 1000 (1991); *Myers v. Hundley* 101 F.3d 542, 544 (8th Cir. 1996); *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).  Clearly, the conditions Marin was subjected to do not meet the level required to violated the Eighth Amendment.

### *Discrimination*

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)(citation omitted).  Only *deliberate* discrimination is actionable under the Equal Protection Clause. *Personnel Administrator v. Feeney*, 442 U.S. 256, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979); *Washington v. Davis*, 426 U.S. 229, 239- 48, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976).  Thus, a claim of racial discrimination under the Equal Protection Clause requires a showing of discriminatory intent. *Washington*, 426 U.S. at 239-40.

Here, there is no genuine issue of fact as to whether Lt. Cupp intentionally discriminated against Marin because he is Hispanic.  He indicates he was discriminated against by the guards and he never complained about the discrimination. *Resp.* at ¶ 15.  He does not contend Lt. Cupp was involved in the alleged discrimination or even aware of it. *Id.*  In short, there is nothing from which an inference of discrimination can be drawn.  Furthermore, Marin did not exhaust his administrative remedies on this claim. *Resp.* at ¶ 15.

**Conclusion**

For the reasons stated, I recommend that defendant's motion for summary judgment (Doc. 20) be granted and this case dismissed.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **18th day of August 2010.**

/s/ *J. Marschewski*
 HON. JAMES R. MARSCHEWSKI
 CHIEF UNITED STATES MAGISTRATE JUDGE